# 24-2887

## United States Court of Appeals
## for the Second Circuit

Rogelio Knights, Jr.,

*Plaintiff-Appellee,*

*against*

City University of New York,

*Defendant-Appellant,*

Thomas A. Isekenegbe, Christopher Todd Carozza,

*Defendants.*

On Appeal from the United States District Court
for the Eastern District of New York

## BRIEF FOR APPELLANT

Richard Dearing
Melanie T. West
D. Alan Rosinus, Jr.
   *of Counsel*

February 19, 2025

Muriel Goode-Trufant
*Corporation Counsel
of the City of New York*
Attorney for Appellant
100 Church Street
New York, New York 10007
212-356-0854
arosinus@law.nyc.gov

## TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ............................................................... iii

PRELIMINARY STATEMENT ........................................................... 1

JURISDICTIONAL STATEMENT .................................................... 2

ISSUES PRESENTED .................................................................... 2

STATEMENT OF THE CASE ........................................................... 3

    A. Knights' termination and district court action, and the ensuing jury verdict awarding him only $1 in nominal damages and no other relief ............................................. 3

    B. The district court's initial decision awarding Knights $75,000 in attorney's fees .................................................... 6

    C. This Court's decision vacating the initial fee award and the district court's decision awarding fees in the same amount on remand ........................................................... 8

SUMMARY OF ARGUMENT ........................................................... 11

ARGUMENT

POINT I

    KNIGHTS IS NOT ENTITLED TO ANY ATTORNEY'S FEES IN LIGHT OF THE NOMINAL DAMAGES VERDICT ....................................................................... 13

    A. Binding precedent forecloses a fee award in this case ..... 13

    B. The district court failed to provide an explanation for its fee award consistent with that binding precedent, as this Court directed it to do on remand. .................................. 17

i

## TABLE OF CONTENTS (cont'd)

**Page**

POINT II

    EVEN IF KNIGHTS WERE ENTITLED TO FEES, THE
FEE AWARD IS GROSSLY EXCESSIVE ..............................20

CONCLUSION ................................................................................22

CERTIFICATE OF COMPLIANCE .................................................23

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Buckhannon Bd. & Care Home v. W. Va. Dep't of Health & Human Res.,*
   532 U.S. 598 (2001) ......................................................................... 13

*Carroll v. Blinken,*
   105 F.3d 79 (2d Cir. 1997) ................................................. 14, 20, 21

*Carroll v. Blinken,*
   42 F.3d 122 (2d Cir. 1994) ............................................................ 21

*Chabad Lubavitch of Litchfield Cty. v. Litchfield Historic Dist. Comm'n,*
   934 F.3d 238 (2d Cir. 2019) ........................................................... 11

*Farrar v. Hobby,*
   506 U.S. 103 (1992) ................................................................*passim*

*Hensley v. Eckerhart,*
   461 U.S. 424 (1983) ......................................................................... 9

*Lee v. McCue,*
   No. 04-civ-6077 (CM), 2007 U.S. Dist. LEXIS 57867
   (S.D.N.Y. July 25, 2007) ......................................................... 19, 20

*O&G Indus. v. AMTRAK,*
   537 F.3d 153 (2d Cir. 2008) ............................................................ 2

*Pino v. Locascio,*
   101 F.3d 235 (2d Cir. 1996) ...................................................*passim*

**Statutes**

28 U.S.C. § 1291 .................................................................................. 2

42 U.S.C. § 1983 .................................................................................. 2

42 U.S.C. § 1988 .................................................................................. 2

CPLR 7511(b)(1) ............................................................................... 18

## PRELIMINARY STATEMENT

This attorney's fees case returns to this Court virtually unchanged following a remand. On the first go-round, this Court vacated the order of the United States District Court for the Eastern District of New York (Block, U.S.D.J.), which had awarded plaintiff Rogelio Knights, Jr. $75,000 in attorney's fees following a jury verdict awarding him only nominal damages of $1 on his stigma-plus due process claim. Reaffirming the governing law generally barring a fee award in nominal-damages-only cases, the Court directed the district court to justify any fee award with specific reference to the parameters limiting a district court's discretion over fee awards in these circumstances. But on remand, the district court simply reinstated the exact same fee award and essentially reiterated the same reasoning that this Court found inadequate.

The Court should reverse. Binding precedent from both the Supreme Court and this Court establishes that a plaintiff like Knights, who receives only nominal damages and does not prevail on any novel issue of law, is not entitled to fees. The district court has twice acknowledged that precedent but then disregarded it, expressly based on the impermissible consideration that the court disapproved of CUNY's litigation strategy of taking steps to render its dispute with Knights moot rather

than engaging in protracted arbitration. That reasoning is misguided, but more importantly, it is irrelevant to the fee-award determination.

Even setting aside that Knights' fee application should have been denied in full as a matter of law, the district court's award of $75,000 in fees was grossly excessive. This Court has held, in the context of a plaintiff who (unlike Knights) obtained a favorable ruling on a novel issue of law, that a plaintiff who receives only nominal damages and whose case didn't serve a substantial public interest should not receive a substantial fee award. So even if Knights were entitled to any fees—which he is not— his fee award would have to be reduced to an insubstantial amount.

## JURISDICTIONAL STATEMENT

Knights invoked the jurisdiction of the district court by asserting claims under 42 U.S.C. § 1983 and by seeking attorney's fees under 42 U.S.C. § 1988 (Joint Appendix ("A") 21-37, 172-82). This Court has jurisdiction of this appeal by virtue of 28 U.S.C. § 1291, because the district court issued a final judgment awarding fees in an amount certain (Special Appendix ("SPA") 10, 30). *E.g.*, *O&G Indus. v. AMTRAK*, 537 F.3d 153, 167 (2d Cir. 2008).

## ISSUES PRESENTED

1.    Did the district court erroneously reinstate its fee award, considering that Knights received only $1 in nominal damages after

seeking millions of dollars in compensatory and punitive damages, and that the district court failed to identify any considerations that might warrant its exercise of discretion under these circumstances?

2. Even assuming that Knights was entitled to some portion of his attorney's fees, did the district court erroneously award him a substantial fee award given that he received virtually none of the relief that he sought?

## STATEMENT OF THE CASE

### A. Knights' termination and district court action, and the ensuing jury verdict awarding him only $1 in nominal damages and no other relief

Knights, a temporary CUNY contract employee, was working as the interim student athletics director at Bronx Community College when a student athlete accused him of sexually harassing her, prompting CUNY to conduct a Title IX investigation (A21-26). After investigators substantiated the allegation, Knights was fired 13 days before his approximately seven-month contract expired (A28, 63-64).

After he was fired, Knights sought post-termination arbitration (A30-31). He also filed an article 78 proceeding challenging his termination, but because of the pending arbitration, his article 78 petition was dismissed for failure to exhaust administrative remedies (A29-30). Shortly before arbitration was to begin, CUNY retroactively reinstated

Knights and paid him for the brief 13-day remainder of his temporary contract (A22, 30-31, 63-64). It then successfully moved to dismiss the arbitration as moot (*id.*; SPA17-20).

In the award finding that the arbitration was moot, the arbitrator addressed Knights' argument that he was entitled to a name-clearing hearing, which, Knights asserted, kept the arbitration from being moot (SPA17, 20). The arbitrator rejected Knights' argument because the Supreme Court precedent that he cited "appl[ied] to public employees with a property interest in their title"—something that Knights, who did not have "a civil service appointment in his title," did not have (SPA20).

Knights subsequently brought this federal action against CUNY and two of its employees, asserting that these defendants had deprived him of liberty and property interests without due process, and seeking to vacate the dismissal of the arbitration (A32-36). In his operative complaint, Knights sought $15 million in damages for alleged mental suffering and damage to reputation, plus a damages award for lost past and future income and other financial loss in an amount to be determined at trial (A36-37). He also sought $30 million in punitive damages (*id.*), meaning that he sought a grand total of $45 million in compensatory and punitive damages plus additional compensatory damages.

After discovery, defendants moved for summary judgment, and Knights cross-moved for partial summary judgment (A244). The district court denied Knights' motion and granted defendants' motion on all claims except for Knights' liberty-based due process claim against CUNY, finding four issues of fact that a jury had to resolve (A248-261). The surviving "stigma-plus" claim pertained to Knights' allegation that CUNY improperly fired him and that CUNY employees made stigmatizing false statements about him, allegedly damaging his reputation and entitling him to a name-clearing hearing (A33-34, 256-59).

At the end of a four-day trial, Knights asked the jury to award him nearly $3.8 million in economic damages and at least $500,000 in damages for mental and emotional suffering, which amounted to a total request for about $4.3 million in damages (A191, 656-57). In its charge to the jury, the court stated that the jury should determine several factual issues material to Knights' stigma-plus claim, including whether CUNY officials had made stigmatizing statements, whether those statements had been disseminated, and whether he had received anything that would in fact qualify as a name-clearing hearing (A690-92).

The court further instructed the jury that if it determined by a preponderance of the evidence that the sexual harassment allegations against Knight were true, it should not award him economic or non-

5

economic damages (A695-96). And in response to a later question from the jury's foreperson, the court instructed the jury that, if it found by a preponderance of the evidence that CUNY had denied Knights a name-clearing hearing but that the sexual harassment allegations against him were true, it should award him only nominal damages (A737-38). In other words, Knights was not entitled to compensatory damages for allegedly false statements—even if he did not receive a name-clearing hearing—if those statements were in fact true.

The jury acted accordingly. It determined that Knights had been denied a name-clearing hearing but awarded him zero dollars in both economic and non-economic damages, awarding him only $1 in nominal damages instead (R770-71). The district court entered a final judgment in that amount (R773).

## B. The district court's initial decision awarding Knights $75,000 in attorney's fees

Although he was awarded only nominal damages on the sole remaining claim against the sole remaining defendant, Knights sought $119,700 in attorney's fees (A160). CUNY principally argued in opposition that Knights wasn't entitled to any attorney's fees because he didn't recover compensatory damages or any other meaningful relief (A196-

6

202). The district court nevertheless awarded Knights $75,000 in fees (A799).

In so doing, the district court stated that it was "mindful" of the Supreme Court's holding in *Farrar v. Hobby*, 506 U.S. 103 (1992), that a plaintiff who recovers only nominal damages due to failure to prove an essential element of his claim for compensatory relief is usually entitled to no attorney's fees at all (A787 (quoting *Farrar*, 506 U.S. at 115)). It further noted this Court's statement in *Pino v. Locascio* that, under *Farrar*, the award of fees to a plaintiff who received only nominal damages "will be rare" (*id.* (quoting *Pino v. Locascio*, 101 F.3d 235, 238 (2d Cir. 1996))). And it recognized that, in *Pino*, this Court "cabined" the instances in which such a plaintiff would be entitled to fees to circumstances where the litigant achieved a "tangible result … that 'confers a benefit to society,' such as the creation of a new rule of liability that served a significant public purpose'" (*id.* (internal citations omitted) (quoting *Pino*, 101 F.3d at 238-39)).

The district court, moreover, ruled that "this case does not fall within any of the exceptions articulated in" *Pino* or other post-*Farrar* precedents (A788). But, without explaining how it could disregard this binding caselaw, the court nevertheless ruled that Knights was entitled to fees (*id.*). The court believed that in successfully mooting out the

7

arbitration by letting Knights retroactively finish the term of his employment contract with pay, CUNY had left Knights with no choice but to resort to this federal action to get a name-clearing hearing (A795-97).

The court characterized CUNY's actions in rehiring and paying Knights and then successfully seeking to moot the arbitration as "questionable behavior," but again failed to explain how that could vitiate the force of binding precedent (A797). It simply said that, although "deference should be paid to *Farrar* and its progeny," Knights' right to a name-clearing hearing entitled him to fees anyway (A797-98). The court then reduced Knights' fee award to account for his "limited success," settling on the $75,000 figure that it awarded (A798 (quotation marks omitted) (quoting *Hensley v. Eckerhart*, 461 U.S. 424, 436-37 (1983))).

### C. This Court's decision vacating the initial fee award and the district court's decision awarding fees in the same amount on remand

CUNY appealed, and in a unanimous decision, this Court vacated the district court's fee award (A802). The Court determined that the district court had "offered no concrete basis for its determination that a fee award—particularly a substantial fee award—was warranted in this case," noting that Knights "did not succeed on the vast majority of his claims" and "prevail[ed] only on a single claim for nominal damages of

8

$1 after demanding $45 million in his Complaint and over $4 million at the jury trial" (A803).

This Court also addressed the district court's reliance on *Hensley v. Eckerhart*, 461 U.S. 424 (1983), noting that, though *Hensley* vests some discretion about fee awards in district courts, it also directs courts to exercise this discretion "in light of the considerations [that the Supreme Court and this Court have] identified" (A803-04). And it quoted *Hensley*'s language that the "most critical factor" in this analysis is the "degree of success obtained" (A803 (quotation marks omitted) (quoting *Hensley*, 461 U.S. at 437)). The Court found that the district court had "failed to adequately explain how it exercised its discretion in light of the considerations identified in *Hensley*," and of "the long line of other cases that provide guidance on the propriety of fee awards, particularly in nominal-damages cases" (A803-04). As a result of this finding, the Court "remand[ed] for the District Court to reconsider its award of fees" based on "the relevant standards and considerations" and, if it found that a fee award was still warranted, "to articulate its basis for such a finding" (A804).

On remand, the district court protested that it "thought that [its original] decision laid out the bases for [its] fee award" (SPA3). The court claimed that *Farrar* and *Pino* did not preclude "unusual, rare

9

situations where justice and fairness support a fee award" (SPA4 (emphasis omitted)), without explaining how this view could be reconciled with its previous acknowledgment that *Pino* had "cabined those rare circumstances justifying a fee award" to cases in which the litigation achieved "a tangible result" (A787). Instead, the court pointed to an unpublished 2007 district court decision where a plaintiff "prevailed on a significant constitutional claim," was awarded only nominal damages, and yet was awarded fees, as the sole authority supporting its decision to award fees here (SPA4).

Beyond that one nonbinding case, the court's reasoning rested on its previously asserted belief that CUNY acted in "bad faith" by paying Knights for the remainder of his contract and then seeking to moot out the arbitration. Citing no law to support its accusations, the court speculated that "[s]urely, CUNY's counsel must have known the law" that supposedly entitled Knights to continue with his arbitration even though the termination that prompted it had been rescinded (SPA7-8). Finding that CUNY had engaged in "manipulative behavior" by making a constitutional argument with which a neutral arbitrator agreed, the district court stated that it "simply could not in good conscience condone [that] behavior and penalize Knights' attorney" by not compensating him for six years of litigation (SPA8). The court again reduced the

10

amount awarded from Knights' approximately $120,000 request to $75,000 because Knights did not receive any monetary damages (SPA8-10).

## SUMMARY OF ARGUMENT

This Court reviews a district court's award of attorney's fees for abuse of discretion, which occurs when a district court's decision "rests on an error of law" or on "clearly erroneous factual finding," or when the decision "cannot be located within the range of permissible decisions." *Chabad Lubavitch of Litchfield Cty. v. Litchfield Historic Dist. Comm'n*, 934 F.3d 238, 243 (2d Cir. 2019) (quotation marks omitted) (quoting *McDaniel v. Cty. of Schenectady*, 595 F.3d 411, 416 (2d Cir. 2010)).

Binding precedent from the Supreme Court and this Court clearly holds that attorney's fees should not be awarded in a case like this one, where a federal civil-rights litigant seeks millions of dollars in compensatory damages but ultimately receives only $1 in nominal damages and no other relief, and where the litigation does not result in a new liability rule that benefits the public. Here, the district court ignored that binding precedent and improperly awarded Knights $75,000 in fees anyway, for reasons that are both incorrect and irrelevant to a legally proper fee analysis.

11

The district court's reasoning—that CUNY supposedly acted in "bad faith" by choosing to pay Knights out for the very brief remainder of his temporary employment contract, thereby mooting out the arbitration that he had brought about his termination—is irrelevant to the settled framework for analyzing appropriate attorney's fees. The district court did not point to any authority or even offer any coherent explanation for its belief that CUNY's strategic choice to simply pay Knights and thereby end the arbitration was anything other than a legitimate litigation strategy—a minimum expectation when that supposed "bad faith" conduct was the sole basis of the court's unsupported fee award. But even assuming for the sake of argument that CUNY's conduct was inappropriate, that has no bearing on any of the limited exceptions to the general rule that plaintiffs who receive only nominal damages get no attorney's fees—the issue that this Court specifically directed the district court to address on remand.

Finally, even if Knights were entitled to more than zero dollars in fees (which he is not), the amount that the district court awarded is grossly excessive given that Knights obtained essentially none of the relief that he sought.

## ARGUMENT

## POINT I

## KNIGHTS IS NOT ENTITLED TO ANY ATTORNEY'S FEES IN LIGHT OF THE NOMINAL DAMAGES VERDICT

### A. Binding precedent forecloses a fee award in this case.

Under binding caselaw from the Supreme Court and this Court—caselaw that the district court has now repeatedly acknowledged, yet chosen to disregard—Knights is not entitled to any attorney's fees because he received only nominal damages and nothing else at the end of his lawsuit. The district court's decision should therefore be reversed, and the court should be directed to enter judgment denying Knights' fee motion in its entirety.

In *Farrar v. Hobby*, the Supreme Court addressed the reasonableness of an attorney's fee award in a federal civil-rights case where the plaintiff received only nominal damages. 506 U.S. at 105, 114-16. The Court noted that "'the most critical factor' in determining the reasonableness of a fee award 'is the degree of success obtained.'" *Id.* at 114 (quoting *Hensley*, 461 U.S. at 436); *see also Buckhannon Bd. & Care Home v. W. Va. Dep't of Health & Human Res.*, 532 U.S. 598, 642 n.14 (2001); *Pino*, 101 F.3d at 237. It ruled that, when a plaintiff fails to prove

13

an essential element of his claim for monetary relief and receives only nominal damages as a result, "the only reasonable fee is usually no fee at all." *Farrar*, 506 U.S. at 115.

Subsequently, in *Pino v. Locascio*, this Court held that civil-rights plaintiffs are entitled to fee awards only if they "recover[ ] some significant measure of damages or other meaningful relief," or if they "prevail[ ] on a novel issue of law" and their lawsuit "create[s] a new rule of liability that serve[s] a significant public purpose." 101 F.3d at 239. The Court determined that a plaintiff who sought $21 million but received only $1 in nominal damages was not entitled to any fees. *Id.* at 238-39; *see also Carroll v. Blinken*, 105 F.3d 79, 81 (2d Cir. 1997) ("We held [in *Pino*] that no attorney's fees were appropriate where the plaintiff recovered only nominal damages and received no other meaningful relief.").

As the district court itself found in its initial fee decision (A788), this case doesn't fall within any of the categories justifying a fee award in a nominal-damages case. Here, after protracted litigation in which Knights initially sought over $45 million in his operative complaint and, during his closing statement, asked the jury to award him nearly $3.8 million in economic damages and at least $500,000 for emotional distress damages, Knights instead received only $1 in nominal damages (A36-37, 656-57, 770-71). Indeed, what happened in Knights' case

14

perfectly matches the circumstances contemplated by the general rule set out in *Farrar*: he failed to prove an essential element of his claim for monetary relief—namely, that the sexual harassment allegations against him were false—and received only nominal damages as a result (A695-96, 737-38, 770-71). *Cf. Farrar*, 506 U.S. at 115.

Moreover, as the district court itself admitted (SPA8), Knights' lawsuit did not prompt the creation of a new rule of liability either, much less a new rule that serves a significant public purpose. *Cf. Pino*, 101 F.3d at 239. To the contrary, neither the arguments before the district court in defendants' summary judgment motion nor those made to the jury implicated any novel issues of law.

The procedural history bears this out. At summary judgment, the question before the court on the stigma-plus due process claim (the only claim to survive summary judgment) was whether Knights could establish a stigma-plus claim as a matter of law where, according to defendants, CUNY officials had not made stigmatizing statements, the Title IX report was not sufficiently public, and that report did not implicate due process for other basic factual and legal reasons, and also given that no stigma-plus claim exists for damage to reputation alone (A75-78). Those are not novel legal questions; they are the standard factual inquiries required to adjudicate any stigma-plus claim.

15

And in its decision answering those questions and denying summary judgment as to the stigma-plus claim against CUNY, the district court did not make any novel rulings of law in Knights' favor either. The court simply found that there were three triable disputes of fact material to that claim: whether a certain individual's statements to the New York Daily News, as well as statements included in the Title IX report, were false and injured Knights; whether the Title IX report was disseminated widely enough for any false statements in it to qualify for stigma-plus liability; and whether defendant Thomas Isekenegbe's role in firing Knights gave rise to *Monell* liability in light of the alleged actions of his subordinates (A146-49).

Nor can the jury's finding that Knights was entitled to a name-clearing hearing be construed as a finding on a novel issue of law. The jury was simply charged with making a factual determination about whether Knights was entitled to such a hearing based on whether stigmatizing statements had been made and published, and whether he had in fact received a constitutionally sufficient hearing (A690-92).

This case therefore does not fall within any of *Pino*'s exceptions to the no-fees-in-nominal-damages-only-cases rule. *Pino*, 101 F.3d at 239. It is, rather, a case like *Farrar*, in which "fee awards are *not appropriate* where ... a plaintiff wins only 'the moral satisfaction of knowing that a

16

federal court concluded that [his] rights had been violated.'" *Id.* at 238 (emphasis added) (quoting *Farrar*, 506 U.S. at 114). Exactly like the plaintiff in *Pino*, Knights brought multiple claims against multiple parties but "prevailed on only one claim … against only" one defendant, and "received only $1.00 in damages." *Id.* (emphasis omitted). As this Court noted in *Pino*, "[t]he only way" that Knights "could have been less successful is if [he] had lost altogether." *Id.* And as this Court concluded in *Pino*, addressing those identical material facts: "If this is not a case in which *Farrar* precludes a fee award[,] it is hard to construct one." *Id.* The proper disposition of Knights' fees motion simply could not be clearer: he is entitled to nothing in fees.

### B. The district court failed to provide an explanation for its fee award consistent with that binding precedent, as this Court directed it to do on remand.

On remand from this Court, the district court again asserted that Knights was entitled to fees for reasons wholly divorced from "'the degree of success obtained,'" *Farrar*, 506 U.S. at 114 (quoting *Hensley*, 461 U.S. at 436), and from this Court's directly on-point analysis of the materially identical factual scenario in *Pino*, 101 F.3d at 238. Ignoring the fact that Knights sought millions of dollars but received only $1, the district court did not even attempt to suggest that its decision was based

17

on the accepted exceptions to the general rule against fees—whether Knights received any "meaningful relief" or "prevailed on a novel issue of law." *Pino*, 101 F.3d at 238-39; *see also Farrar*, 506 U.S. at 114-16. Instead, the court expressly based its decision on a purported "justice and fairness" exception that it invented from whole cloth.

In addition, the court's reasoning—namely, that CUNY supposedly acted in "bad faith" by paying Knights for the remainder of his contract and then successfully arguing that the arbitration was moot (SPA5-8)—doesn't hold water even on its own merits. First of all, the court's bad-faith finding is wholly unfounded. A neutral arbitrator agreed with CUNY that Knights lacked a due process right to have the arbitration continue (SPA20). Even if the district court is right that the arbitrator was mistaken, her conclusion belies the court's implication that CUNY's legal position was so frivolous as to be in bad faith.

Second, since Knights could have continued pursuing his due process claim by seeking to vacate the arbitration award on constitutional grounds under CPLR 7511(b)(1), the court made a factual error in asserting that Knights had to bring this federal action to vindicate his rights (SPA7). The fact that the jury necessarily found by a preponderance of the evidence that Knights committed the sexual harassment that

18

CUNY terminated him for (A695-96, 737-38, 770-71, 773) also undercuts the district court's repeated and baseless accusation of bad faith.

Even setting aside all those problems with the district court's opinion, moreover, the court still has not explained how Knights' purported need to file this federal action enabled him to skirt the clear bar on fees that *Farrar* and *Pino* impose, given the merely nominal relief that he ultimately received. There's no exception in *Farrar*, *Pino*, or elsewhere allowing fees to be obtained by civil-rights litigants who receive only nominal damages and who don't get a favorable ruling on a novel legal issue of public benefit, but who supposedly had to bring a civil-rights action to vindicate one of their rights. Indeed, *many* federal litigants bring lawsuits to vindicate their rights, which is one of the reasons that nominal damages are available to begin with. Allowing fee awards in these circumstances would make such awards neither "rare" nor "exception[al]" in nominal-damages cases, contrary to both *Pino* and *Farrar*. *Pino*, 101 F.3d at 238 (citing *Farrar*, 506 U.S. at 115). *Pino*, like *Farrar*, focuses on the type of relief that the plaintiff received, not on what prompted the plaintiff to bring a lawsuit.

To the extent that the district court relied on the Southern District's decision in *Lee v. McCue*, No. 04-civ-6077 (CM), 2007 U.S. Dist. LEXIS 57867 (S.D.N.Y. July 25, 2007), that reliance is misplaced. Most

19

importantly, the decision of another district court is not binding authority in this Court and cannot nullify the binding and dispositive holdings in *Farrar* and *Pino*. Insofar as *Lee* is inconsistent with those decisions, it must be disregarded. In any event, *Lee* involved a plaintiff who prevailed on multiple claims, and did not apply the rule in *Pino* because, in *Pino* (and in Knights' case, too), the plaintiff prevailed on only one. *Lee*, 2007 U.S. Dist. LEXIS 57867, at *19.

For all these reasons, the district court erred as a matter of law in determining that Knights is entitled to any fee award at all. Its decision should therefore be reversed.

### POINT II

### EVEN IF KNIGHTS WERE ENTITLED TO FEES, THE FEE AWARD IS GROSSLY EXCESSIVE

Knights' fee request should be denied in its entirety for the reasons set forth in Point I. But even if the circumstances of this case differed such that Knight were entitled to some amount in fees, the district court's award of $75,000 would still be grossly excessive under binding caselaw from this Court.

In *Carroll v. Blinken*, another post-*Farrar* civil-rights case, this Court reiterated that, "[w]here the damage award is nominal or

modest ... and no substantial public interest is served, a substantial fee award cannot be justified." 105 F.3d at 81. The plaintiffs in *Carroll* obtained minimal—but "more than strictly nominal"—relief, in the form of a ruling in their favor from this Court on a novel issue of law that bound the defendants and modestly altered the defendants' practices going forward. *Id*. at 81-82; *see also Carroll v. Blinken*, 42 F.3d 122, 125, 129-30 (2d Cir. 1994). The Court nonetheless observed that "no substantial public interest" had been "served" by the relief, leading it to affirm a fee award that gave the plaintiffs only a little over 4% of the fees that they'd sought. 105 F.3d at 81-82.

Here, Knights was undisputedly awarded nominal damages of $1, so the no-fee principles of *Farrar* and *Pino* directly apply. But even if Knights had obtained modest but more-than-nominal relief, where no substantial public interest was served by the outcome of his lawsuit, he would still not be entitled to a substantial fee award. Yet the district court awarded him over 60% of the nearly $120,000 in fees that he sought on a rate-and-hour basis (SPA8, 10). That award is flatly inconsistent with *Carroll*'s directive. Thus, even if this Court were to disagree with us on Point I, it should direct the district court to reduce the fee award to an insubstantial amount to bring it in line with this Court's decision in *Carroll*.

21

## CONCLUSION

The district court's memorandum and order awarding Knights $75,000 in attorney's fees should be reversed and the district court should be directed to deny Knights' attorney's fees motion in its entirety, or, alternatively, the district court should be directed to reduce the fees awarded to Knights to an insubstantial amount.

Dated:  New York, New York
        February 19, 2025

Respectfully submitted,

MURIEL GOODE-TRUFANT
*Corporation Counsel*
*of the City of New York*
Attorney for Appellant


By:  /s/ D. Alan Rosinus, Jr.
     D. ALAN ROSINUS, JR.
     Assistant Corporation Counsel

     100 Church Street
     New York, New York 10007
     212-356-0854
     arosinus@law.nyc.gov

RICHARD DEARING
MELANIE T. WEST
D. ALAN ROSINUS, JR.
   *of Counsel*

22

## CERTIFICATE OF COMPLIANCE

I hereby certify that this brief was prepared using Microsoft Word, and according to that software, it contains 4,601 words, not including the table of contents, table of authorities, this certificate, and the cover.

<u>/s/ D. Alan Rosinus, Jr.</u>
D. ALAN ROSINUS, JR.